IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHHORT KHUT,<br><br>        Plaintiff,<br><br>  v.<br><br>MICHAEL ASTRUE,<br><br>        Defendant.<br>_____/ | No. C-09-00673 EDL<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS** |

      Plaintiff Chhort Khut ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) challenging the final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income disability benefits for the closed period from June 1, 2005 through July 22, 2009.  Specifically, Plaintiff contends that the decision of Administrative Law Judge ("ALJ") Alan Goldhammer that Plaintiff was not disabled and was ineligible for supplemental security income was based on legal error and was not supported by substantial evidence.  Plaintiff contends that the ALJ erred by:  (1) rejecting Plaintiff's treating source evidence in favor of a non-treating, non-examining source; (2) failing to provide clear and convincing reasons for finding Plaintiff lacked credibility; (3) making a residual functional capacity ("RFC") determination lacking substantial basis in the record; and (4) failing to pose accurate, complete hypotheticals to the vocational expert.  Plaintiff requests that the Court reverse the decision of the Commissioner and award benefits or, in the alternative, remand the matter for further administrative proceedings.  As discussed below, the Court grants in part Plaintiff's motion, denies Defendant's cross-motion for summary judgment, and remands the case for further proceedings.

**Procedural Background**

      On October 25, 2005, Plaintiff filed an application for Title XVI Supplemental Security

1  Income ("SSI"). Administrative Record ("AR") 50. The Social Security Administration ("SSA")
2  denied his claim initially, and on reconsideration on November 6, 2006. AR 52, 62. Plaintiff
3  requested a hearing, which occurred on July 25, 2008 in front of ALJ Goldhammer, after which the
4  ALJ rendered an unfavorable decision on August 25, 2008. AR 11-49. The ALJ found that Plaintiff
5  did not have an impairment qualifying him as disabled, that Plaintiff had an RFC to perform a full
6  range of work at all exertional levels with two limitations, and that Plaintiff could perform the jobs
7  of kitchen helper, hand packer or laundry worker. AR 17-20.

8        The SSA denied Plaintiff's appeal of the ALJ's decision on December 19, 2008. AR 5-8.
9  On February 17, 2009, Plaintiff filed this suit for judicial review in federal court. On August 27,
10 2009, Plaintiff filed a motion for summary judgment, in response to which Defendant Michael
11 Astrue ("Defendant") brought a cross-motion for summary judgment on September 24, 2009. On
12 October 8, 2009, Plaintiff filed a reply.

13 **Factual Background**

14       Plaintiff was born in Cambodia on September 4, 1956 and immigrated to the United States in
15 1985, after escaping the genocide that was occurring in Cambodia under the Khmer Rouge regime.
16 AR 26, 28-29. Plaintiff was fifty-two years old at the time the ALJ issued his unfavorable decision.
17 Plaintiff has been under medical care since January 2005 for treatment of diagnosed post-traumatic
18 stress syndrome ("PTSD"). See AR 199, 268, 271, 273; see generally AR 223-273. Plaintiff's
19 medical records contain the following information.

20       Plaintiff had been a farmer in Cambodia, where he was married and had one child at the time
21 that he and his family fled the country to avoid starvation, capture and possible death. See AR 27-
22 29. Plaintiff attended school in Cambodia for four years and is illiterate in both the Cambodian and
23 English languages. AR 137; see also AR 102 (stating that Plaintiff cannot speak and understand
24 English), 194 (stating that claimant does not speak any English and speaks only Cambodian), 197
25 (stating that "claimant is currently illiterate in the Cambodian and the English language"). When
26 Plaintiff moved to the United States in 1985, he enrolled in English as a Second Language ("ESL")
27 classes, but did not complete many classes because he found them to be particularly difficult and he
28 did not feel he could understand the language. See AR 270. In 1985, Plaintiff was involved in a car

1 accident. See AR 137-138. When questioned about money collected following the accident,

2 Plaintiff explained that he used the money to care for his family. AR 138. Plaintiff is married with

3 seven children, some of whom live with him and his wife in Oakland, California.[1]

4     At the time of the hearing, Plaintiff had seen Dr. Mona Afary, a Ph. D. and MFT, every

5 couple of months since January 16, 2005 for psychological treatment of PTSD, depression, anxiety,

6 nightmares, insomnia and uncontrollable anger. See AR 269, 273, 264. Plaintiff had also been

7 treated by Dr. James Gracer since June 2005 for PTSD, and receives prescription medications for

8 insomnia and pain from Dr. Gracer. See AR 268. Plaintiff's nightmares of being chased by the

9 Khmer Rouge, in addition to his anxiety and depression, had gotten so severe that they became

10 disabling in June 2005. See AR 269 (Dr. Afary's first diagnosis of PTSD); 268 (Dr. Gracer's first

11 diagnosis of PTSD). Drs. B. Camille Williams and Nayvin Gordon completed a Physical RFC

12 Assessment on February 4, 2006 indicating that Plaintiff was to "avoid all exposure" to hazards such

13 as machinery and heights. AR 205. The assessment verified that Plaintiff's alleged symptoms are

14 attributable to a medically determinable impairment, though the doctors notably did not indicate the

15 impairment or elaborate beyond simply circling the appropriate selection on the RFC assessment

16 form. See AR 206.

17     On January 14, 2006, Plaintiff received a comprehensive internal medicine evaluation from

18 Dr. Christian Huy Dang. See AR 194-196. Dr. Dang diagnosed Plaintiff with daytime somnolence

19 and recommended precautions, but stated that Plaintiff did not have any functional limitations. AR

20 196. Notably, with respect to Plaintiff's alleged physical shoulder and back pain from the 1985 car

21 accident, Dr. Dang found "no presence of any spasm, tenderness, crepitus, effusion, or deformity

22 noted in any major muscle groups or joints" on the date of his exam. See AR 195-196. He did

23 write, however: "The content and conclusion of this report is based on a single session interview and

24 testing procedure. Given this limitation, it would be very difficult to infer the claimant's day to day

---

[1] It is unclear from the record how many of Plaintiff's children live with him, but it is at least three. See AR 137 (2006 Report of Investigation stating that six of Plaintiff's seven children live in this home); AR 268 (treating psychiatrist's 2005 progress note stating that Plaintiff lives with five of his children); AR 29 (Plaintiff's testimony during July 25, 2008 hearing that only three children were living with him); AR 198 (Dr. Zizmor's psychiatric evaluation stating that four children live at home with Plaintiff).

3

functional capacity on the basis of this consultation exclusively." See id.

On January 26, 2006, Plaintiff was seen by Dr. Michael Zizmor, a treating psychiatrist, who diagnosed Plaintiff with depressive disorder and noted anger symptoms and depressed mood three times a week. AR 199. Dr. Zizmor further diagnosed chronic, delayed-type PTSD, residual nightmares of his "personal trauma" in Cambodia, a history of hyper vigilance and difficulties concentrating, visual illusions, insomnia and headaches. Id. Dr. Zizmor found that Plaintiff would have: mild difficulties understanding, remembering and carrying out short and simple instructions; mild to moderate difficulties interacting appropriately with coworkers, supervisors and the public, and dealing with the stresses of a full-time work schedule; moderate difficulties maintaining emotional stability and predictability, adjusting to changes in the work place, and dealing with work-related issues such as attendance and safety; and mild to moderate difficulties with concentration, persistence and pace at work. Id.

On February 23, 2006 and again on March 2, 2006, Cooperative Disability investigators visited Plaintiff at his home upon the request of the SSA, based on Plaintiff's involvement with Dr. Afary because the SSA considered her to be an unreliable treating source. See AR 133-141. The SSA further considered Plaintiff a high risk of fraud suspect because his wife was applying for SSI disability benefits at the same time he was. AR 134. Two investigators visited Plaintiff's home in February at 11:45 a.m. and were greeted by his daughter, who told them Plaintiff was sleeping but that she would wake him. AR 136. The investigators questioned Plaintiff for an hour, despite their knowledge that he needed to leave after his wife called reminding him to pick her up from her weekly memory class, which had ended at 12:00 p.m. See AR 138. They asked questions about Plaintiff's doctors, why he has never worked, why his children do not work, what he did in Cambodia, his medications, and why he applied for SSI. See AR 138-139. When the investigators returned in March, they arrived at Plaintiff's home at 10:35 a.m. and entered through the back door, which scared Plaintiff because nobody uses the back door except family members. AR 140, 257. During this visit, the investigators questioned Plaintiff about the reasons he has not worked and his activities at night, noting that if he were out at night, it is not surprising that he is tired during the day. See AR 140-141.

4

1    On March 3, 2006, Plaintiff and his wife requested an "urgent session" with Dr. Afary to
2 discuss the investigators' visits. AR 255. Dr. Afary noted that Plaintiff was distraught, anxious,
3 unstable and frustrated. Id. Plaintiff explained that no greetings were exchanged when the
4 investigators entered his homes, but that they simply showed their badges. AR 257. Dr. Afary's
5 notes on Plaintiff's retelling of the questioning are mostly compatible with the report by the
6 investigators. See AR 136-141, 255-260.

7    On July 19, 2007, Dr. Gracer administered a Harvard Trauma Questionnaire to Plaintiff,
8 which yielded a high score signifying PTSD. See AR 228-235. Dr. Gracer indicated on the
9 questionnaire that, during the Khmer Rouge regime in Cambodia, Plaintiff experienced: lack of food
10 and water; sickness without medical care; serious injury; brainwashing; combat; being close to
11 death; the murder of family, friends and strangers; and torture (by being beaten in the head and
12 suffocated), among other traumatic experiences. See AR 229-231. According to the questionnaire,
13 Plaintiff reported present recurrent memories of the most terrifying events; recurrent nightmares;
14 feeling detached or withdrawn from people; difficulty concentrating; trouble sleeping; feeling jumpy
15 and easily startled; difficulty performing work or daily tasks; and feeling as though he were going
16 crazy. See AR 232-234.

17    On May 15, 2009, Plaintiff filed a new application for SSI benefits, and on July 22, 2009, the
18 SSA granted Plaintiff's claim. See Pl.'s Mot. 7:7-7:9; Request for Judicial Notice, filed August 27,
19 2009 ("Req. for Judicial Notice") Ex. A.

**Legal Standard**

21    Pursuant to 42 U.S.C. § 405(g), the Court's jurisdiction is limited to the question of whether
22 the findings of fact in the decision are supported by substantial evidence or were based on legal
23 error. 42 U.S.C. § 405(g); see Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990) (citing
24 Davis v. Heckler, 868 F.2d 323, 325 (9th Cir. 1989)). Substantial evidence is "more than a mere
25 scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might
26 accept as adequate to support a conclusion." Sandgathe v. Chater 108 F.3d 978, 980 (9th Cir. 1997);
27 see Richardson v. Perales, 402 U.S. 389, 401 (1971).

28    To determine whether substantial evidence supports the ALJ's decision, courts review the

1  administrative record as a whole, weighing both the evidence that supports and that which detracts
2  from the ALJ's conclusion. Sandgathe, 108 F.3d at 980 (quoting Andrews v. Shalala, 53 F.3d 1035,
3  1039 (9th Cir. 1995)). The trier of fact, not the reviewing Court, must resolve conflicts in the
4  evidence, and if the evidence can support either outcome, the reviewing court may not substitute its
5  judgment for that of the ALJ. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); see also
6  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that "[w]here evidence is susceptible
7  to more than one rational interpretation, it is the ALJ's conclusion that must be upheld").

### A. Definition and Determination of Disability

To qualify for disability insurance benefits, Plaintiff must demonstrate that he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment, which can be expected to result in death or last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). The SSA uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. 416.920; see Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). First, the SSA determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. 416.920(a)(4). Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 25, 2005, the date of his application for SSI. AR 16.

If the claimant did not engage in substantial gainful activity, the SSA proceeds to step two to determine whether the claimant has a "severe medically determinable physical or mental impairment" that meets the duration requirement, which requires that the impairment has lasted or is expected to last for at least twelve months or result in death. Id.; 20 C.F.R. 416.909. If the claimant is found to have a severe impairment, the SSA proceeds to step three to determine whether the impairment is equivalent to one of a number of listed impairments that sets forth impairments in Part A of the analysis, the severity level of which establishes disability under Part B of the analysis. 20 C.F.R. 416.920(a)(4). The SSA presumes that a claimant is disabled if his impairment meets or equals one of the listings. Id.

If the claimant's impairment does not meet or equal one of the listings, the SSA proceeds to step four to determine the claimant's RFC, that is, what work activities the claimant can still perform despite the impairments. Id. The SSA considers the claimant not disabled if he is able to perform

6

his past work. Id. If the claimant cannot perform his past work or has no work history, the SSA proceeds to step five to determine whether the claimant can perform other work, considering claimant's age, education and work experience. 20 C.F.R. 415.920(g). If the claimant cannot perform other work, the SSA finds him disabled. Id. The claimant has the burden of proving that he is disabled. A claimant establishes a prima facie case of disability by showing that his impairment prevents him from performing his previous occupation. Once claimant has done so, however, the burden shifts to the Commissioner to show that claimant can perform other work under step five of the analysis. Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). Steps three, four and five are at issue here. See Mot. for Summ. J. 11:2.

### B. Final ALJ Decision

In his final decision, the ALJ concluded that: (1) Plaintiff did not have an impairment or combination of impairments to meet or medically equal one of the listed impairments; (2) Plaintiff had the RFC to perform a full range of work at all exertional levels with the exceptions of work entailing complicated or complex instructions and work requiring spoken or written English; and (3) Plaintiff had the ability to perform the jobs of kitchen helper, hand packer and laundry worker II. AR 17-18, 20. The ALJ therefore concluded that Plaintiff had not been under a disability as defined in the SSA since October 25, 2005, the date that application was filed. AR 21.

In determining whether Plaintiff's impairment met any of the listed impairments, the ALJ accorded great weight to medical expert Dr. Kivowitz's testimony that "the Claimaint does not meet or equal the Listings." See AR 17. Dr. Kivowitz, who appeared during the hearing by telephone, is a board-certified psychiatrist, and acted as an impartial medical expert at the request of the ALJ. AR 14. The ALJ held that because Plaintiff's mental impairment did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, paragraph "B" was not satisfied. AR 18. The ALJ then held that the evidence failed to establish the presence of paragraph "C" criteria, without explaining his analysis in making the determination. Id. The ALJ did not address whether Plaintiff met paragraph "A" criteria. The ALJ did not discuss any evidence provided by Plaintiff's treating sources at this step.

The ALJ stated that he "credit[ed] the medical expert's testimony and opinion as reasonable

and appropriate to the facts, and adopted Dr. Kivowitz's opinion as his own in finding that Plaintiff had the following limitations: mild restriction in activities of daily living; mild difficulties in social functioning; and moderate difficulties with regard to concentration, persistence or pace. See AR 17. After finding that Plaintiff was not disabled under step three, the ALJ moved on to analyze steps four and five, Plaintiff's RFC and whether Plaintiff could perform work given his RFC, age, education and work experience. See AR 16, 18.

The ALJ found at step four that Plaintiff had the RFC to perform a full range of work at all exertional levels, after discrediting his symptom testimony, with the exception of work entailing complicated or complex instructions, and work requiring spoken or written English. AR 18. He found that Plaintiff's mental impairment "could reasonably be expected to produce the alleged symptoms, including anxiety," but concluded that Plaintiff's statements regarding intensity, persistence and limiting effects of the symptoms were not credible due to their inconsistency with the RFC assessment. Id.

The ALJ considered Plaintiff's lack of work history to be one of the most important credibility factors and explained that Plaintiff "appears to have languished on welfare," thereby concluding that Plaintiff's "apparent lack of motivation to work is relevant on the issue of credibility." The ALJ found additional support for his adverse credibility finding in the fact that Plaintiff was not on psychotropic medication until his first appointment with Dr. Gracer in June 2005, and had never sought counseling or medication. See AR 19. ALJ Goldhammer found interesting and significant the fact that Plaintiff refers to his 1985 car accident as "the reason why he cannot work," yet Plaintiff never had physical therapy or medication for his injury, and the fact that Dr. Dang's physical evaluation was negative. AR 19. He also found interesting and significant Plaintiff's failure to "describe any traumatic events at the hearing although given ample opportunity by his attorney." See AR 19. In concluding step four, the ALJ noted that Plaintiff stated that he is happy outside his home, that he has a valid driver's license, and that he "made good eye contact during the hearing, and appeared able to respond appropriately to questions and to provide details." AR 19. The ALJ held that Plaintiff "appears unmotivated but not impaired from performing simple physical tasks." Id.

At the final step, the ALJ based his conclusion on the testimony of Ms. Trost, an impartial vocational expert requested by the ALJ to participate in the hearing via telephone. See AR 14, 20. The ALJ concluded that Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy and, therefore, made a finding of "not disabled." AR 20. Ms. Trost testified that given the factors presented, Plaintiff would be able to perform the requirements of representative occupations such as: kitchen helper, of which there are 204,000 jobs in the national economy; hand packer, of which there are 110,000 jobs in the national economy; and laundry worker II, of which there are 44,000 jobs in the national economy. AR 20. Each of these jobs can be performed at a "medium" level of work activity and is a "point and do" job that requires only demonstration for the employee to understand the work to be done. Id.

The ALJ stated at the end of his analysis that if Plaintiff could not pay attention 20% of the time, "Ms. Trost agreed that he couldn't work but I see no reason to believe he would be unable to pay attention on a job -- if he wanted to work." Id. The ALJ did not cite any evidence to support this statement, although the record contains evidence of Plaintiff's limited concentration and ability to complete tasks. See id.; see also AR 118 ("usually needs encouragement and help to finish up what he started"), AR 121 ("has tendency to forget and needs help finishing up tasks") (statement by Plaintiff's daughter that he can pay attention for twenty minutes), AR 232 (difficulty concentrating), AR 233 (difficulty performing work or daily tasks); AR 129 (statement by Plaintiff that he can pay attention ten to twenty minutes).

**Discussion**

**1.    The ALJ erred in rejecting evidence from Plaintiff's treating sources Dr. James Gracer and Dr. Michael Zizmor in favor of a non-treating, non-examining source, and in failing to consider Dr. Afary's evidence as lay evidence**

The SSA generally gives more weight to the opinions of treating sources because of their ability to provide a "detailed, longitudinal picture" of the plaintiff's impairments, and because the treating sources have a greater opportunity to know and observe the plaintiff as an individual. See 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). If the treating source's opinion is found to be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

1  substantial evidence in the record, it will be given controlling weight. 20 C.F.R. § 404.1527(d)(2);
2  20 C.F.R. § 416.927(d)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). "A finding that a
3  treating source medical opinion is not well-supported by medically acceptable clinical and
4  laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case
5  record means only that the opinion is not entitled to controlling weight, not that the opinion should
6  be rejected." Orn, 495 F.3d at 631-632.

7  To reject the opinion of a treating source that conflicts with that of an examining source, the
8  ALJ must "make findings setting forth specific, legitimate reasons for doing so that are based on
9  substantial evidence in the record." Magallanes, 881 F.2d at 751 (citing Winans v. Bowen, 853 F.2d
10 643, 647 (9th Cir. 1987)). An ALJ may reject the uncontroverted opinion of a treating source only if
11 he presents clear and convincing reasons supported by substantial evidence in the record for doing
12 so. See Orn, 495 F.3d at 632, Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d
13 759, 762 n.8 (9th Cir. 1989); see also Smolen, 80 F.3d at 1285 (citing Rodriguez, 876 F.2d at 761-
14 762)). The ALJ must do more than offer his conclusions. Orn, 495 F.3d at 632. "He must set forth
15 his own interpretations and explain why they, rather than the doctors', are correct." Id.

16 Here, the issue is whether the ALJ presented clear and convincing reasons supported by
17 substantial evidence for rejecting of the opinions of Plaintiff's treating and examining sources, Dr.
18 Mona Afary, Dr. Michael Zizmor and Dr. James Gracer. ALJ Goldhammer failed to provide any
19 reasons for rejecting the opinions of Plaintiff's treating and examining sources in his opinion. See
20 AR 17-20. The ALJ stated that his "own impression is actually closer to that of Dr. Zizmor,"
21 referring to a diagnosis of depression rather than Post-Traumatic Stress Disorder ("PTSD"), but
22 made a finding of PTSD as Plaintiff's severe impairment, thereby satisfying step two. See AR 17.
23 The ALJ based his findings at step three on the testimony of the non-treating, non-examining,
24 medical expert Dr. Kivowitz, whose testimony the ALJ found "reasonable and appropriate to the
25 facts," although he did not explain why. See AR 17. The ALJ erred by failing to credit the opinions
26 of Plaintiff's treating physician, Dr. Gracer, and Plaintiff's examining physician, Dr. Zizmor. Dr.
27 Afray may not be an acceptable medical source. However, the ALJ erred in not considering her lay
28 evidence.

Dr. Gracer has been treating Plaintiff for PTSD since June 2005, yet the ALJ discussed Dr. Gracer only once in his opinion when he discounted Plaintiff's credibility by saying, "he was not on psychotropic medication until he first saw Dr. James Gracer in June 2005, when he applied for SSI benefits." See AR 19. Defendant argues that the Court can infer from the ALJ's decision that the ALJ considered Dr. Gracer's medical opinions when relying on the expert testimony of Dr. Kivowitz, relying on Magallanes. Magallanes addressed a plaintiff's appeal of the SSA's determination of her disability onset date. The court stated that, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion . . . if those inferences are to be drawn." Id. at 755. In Magallanes, the court found that the ALJ provided specific and legitimate reasons based on substantial evidence in the record for crediting the opinions of some physicians over another physician. Id. The ALJ "summarized the facts and conflicting clinical evidence in detailed and thorough fashion, stating his interpretation and making findings." Id. Here, by contrast, the ALJ failed to summarize any of Dr. Gracer's observations, diagnoses or opinions, and credited only the testimony of non-treating, non-examining medical expert Dr. Kivowitz, thereby failing to meet the clear and convincing standard.

Dr. Gracer has continually noted that Plaintiff's condition had not improved, and regularly prescribed him medication and offered his opinion as to Plaintiff's functional limitations. See AR 266 (condition and diagnosis no better), AR 236 ("continued PTSD, anger, insomnia). In July 2007, Dr. Gracer administered a Harvard Trauma Questionnaire, in which Dr. Gracer marked boxes indicating the following limitations as "extreme:" feeling jumpy, easily startled; difficulty concentrating; trouble sleeping; feeling irritable or having outbursts of anger; sudden emotional or physical reaction when reminded of the most hurtful or traumatic events; difficulty performing work or daily tasks; and feeling as if he were going crazy. AR 228-235. The ALJ committed legal error by failing to consider Dr. Gracer's opinions and failing to provide clear and convincing reasons for rejecting them supported by substantial evidence in the record.

The ALJ also erred by failing to consider the medical diagnoses and opinions of Dr. Zizmor, Plaintiff's examining source. Dr. Zizmor performed a comprehensive psychiatric evaluation of Plaintiff on January 26, 2006, and found that Plaintiff's disability resulted in the following: mild

1  difficulties understanding, remembering and carrying out short and simple instructions; mild to
2  moderate difficulties interacting appropriately with coworkers, supervisors and the public because of
3  depression, anxiety and irritability; possible mild to moderate difficulties dealing the stresses of a
4  regular 8-hour workday / 40-hour workweek; moderate difficulties maintaining emotional stability
5  and predictability; possible moderate difficulties adjusting to changes in the work place; moderate
6  difficulties dealing with work-related issues such as attendance and safety; and mild to moderate
7  difficulties with concentration, persistence and pace at work.  See AR 199.  Dr. Zizmor also noted
8  that Plaintiff's fourth grade education "makes the possibility of work difficult and poor job skills
9  along with poor English speaking skills."  Id.

10  The ALJ neither considered, nor discussed reasons for rejecting Dr. Zizmor's opinion
11  regarding the effects of Plaintiff's PTSD.  The ALJ credited only the testimony of Dr. Kivowitz, a
12  non-treating, non-examining expert, who found Plaintiff's limitations to be more mild, and testified
13  that Plaintiff's disability resulted in the following: mild restriction in activities of daily living; mild
14  difficulties in social functioning; and moderate difficulties with concentration, persistence or pace.
15  See AR 17.  This failure by the ALJ amounted to legal error.

16  Plaintiff's therapist, Dr. Afary, took "quite genuine" notes during Plaintiff's sessions over the
17  course of nearly five years of therapy, the ALJ found.  See AR 17.  The ALJ disregarded the CDI
18  investigation report's suggestion that Dr. Afary was trying to pass herself off as a licensed
19  psychologist, stating that "she may well have a Ph.D."  See id.  Thus, the record is unclear as to
20  whether Dr. Afary is an acceptable medical source such that her opinion could be used to establish a
21  mental impairment under Part A of the analysis (see 20 C.F.R. § 404.1513(a) (stating that sources
22  who can provide evidence to establish an impairment are licensed physicians, licensed or certified
23  psychologists, and others inapplicable on these facts)).  At a minimum, however, her records
24  constitute lay evidence that can be used in Part B of the analysis.  Regardless of her status, the ALJ
25  erred by failing to sufficiently consider her treatment notes as lay evidence of the severity of
26  Plaintiff's impairment.  See Schneider v. Comm'r, 223 F.3d 968, 975 (9th Cir. 2000) (holding that
27  the ALJ erred by failing to consider lay evidence of five letters submitted by the plaintiff's friends
28  and ex-employers regarding the effect of plaintiff's mental impairment on her ability to function in a

12

1  work environment under Part B of step three of the analysis).  There is significant evidence in Dr.

2  Afary's treatment notes regarding the severity of Plaintiff's mental limitations.  For example, Dr.

3  Afary indicated that Plaintiff experienced disappointment and low self-esteem.  See AR 226.

4  Further, Plaintiff stated that he felt "so bad" about not being able to work and bring in an income to

5  his household.  See AR 243; see also AR 251 (noting that Plaintiff feels "hopeless with bottled up

6  rage and anger."); AR 265 (stating that Plaintiff reported that he would "yell over every little

7  thing").  The ALJ, however, did not consider any of Dr. Afary's evidence in connection with

8  determining the severity of Plaintiff's impairment, instead adopting Dr. Kivowitz's testimony that

9  Plaintiff had only mild to moderate impairments.

### 2. The Court need not reach the remaining substantive issues

Plaintiff also argues that the ALJ erred at step four in finding that Plaintiff lacked credibility, that the ALJ's RFC determination lacks substantial basis in the record, and that the ALJ did not pose accurate and complete hypotheticals to the vocational expert.  Because the Court found that the ALJ erred at step three of the disability determination analysis, the Court need not reach these issues relating to step four.

### 3. Plaintiff's request for judicial notice is denied

Plaintiff requested that the Court take judicial notice of his July 22, 2009 SSI claim that was approved.  See Request for Judicial Notice ("Req. For Judicial Notice").  "A court shall take judicial notice if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).  A judicially noticed fact cannot be subject to reasonable dispute and must be "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Sentence six of 42 U.S.C. § 405(g) permits a court to remand a case to the SSA and order additional evidence to be taken, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).

Here, Plaintiff's letter from SSA granting his SSI claim is judicially noticeable under the Rules of Evidence.  However, it is inappropriate new evidence, as explained in Allen v. Comm'r of Soc. Sec., 561 F.3d 646 (6th Cir. 2009).  In Allen, the plaintiff had been denied disability benefits

13

1 and, during his appeal, was subsequently granted benefits by the SSA beginning the day after the
2 ALJ's unfavorable decision. The plaintiff sought to submit evidence of the subsequent granting of
3 benefits and the Sixth Circuit held that "a subsequent favorable decision itself, as opposed to the
4 evidence supporting the subsequent favorable decision, does not constitute new and material
5 evidence under § 405(g)." Allen, 561 F.3d at 653. Similarly, here, Plaintiff has requested that the
6 Court take judicial notice of the subsequent favorable SSI claim decision, but the letter, on its own,
7 "is not itself new and material evidence" to justify a remand under § 405(g). See id. Therefore,
8 Plaintiff's request for judicial notice is denied.

**4.     The Court will not instruct the ALJ to consider Plaintiff's new evidence**

In his reply to Defendant's cross motion, Plaintiff provided additional new evidence that he believes should be considered by the ALJ on remand: a June 30, 2009 evaluation from Dr. Gracer indicating Plaintiff's functional limitations. See Declaration of Doris Ng ("Ng Decl."); see also Booz v. Sec'y of Health & Human Services, 734 F.2d 1378 (9th Cir. 1984). Booz involved a plaintiff who was denied disability benefits and, on appeal before the Ninth Circuit, moved to remand the case based on new evidence of a medical report finding the plaintiff totally disabled from employment during the period in question. Id. at 1380. The doctor reviewed medical tests from previous years in making his determination of disability after the ALJ had rendered an unfavorable decision. Id. Unlike in Booz, however, Plaintiff's new evidence of a doctor's evaluation after his denial of benefits concerns a *present* disability, rather than a past disability during the relevant time period.

Furthermore, the court in Booz found that the plaintiff had met the good cause requirement under 42 U.S.C. § 405(g) because he was of limited financial means and apparently unable to find a qualified medical specialist to review his records within the time allotted by the ALJ. See id. at 1380. The ALJ there acknowledged in his decision that the plaintiff may have been disabled, but that he could not make a determination based on the record. Id. at 1381. Here, there is no indication that the ALJ lacked substantial evidence on which he could base his decision, nor was Dr. Gracer's 2009 evaluation a determination of Plaintiff's disability as of 2005, his application date. Further, there has been no showing of good cause, as there was in Booz, that Plaintiff here lacked the ability

14

or the financial means to obtain necessary medical evaluations for the time of his application. Therefore, the Court denies Plaintiff's request that the Court instruct the ALJ to consider Dr. Gracer's 2009 report.

**Conclusion**

Plaintiff's motion for summary judgment is granted, and Defendant's cross-motion for summary judgment is denied. This matter is remanded for further proceedings in accordance with this Order.

**IT IS SO ORDERED.**

Dated: February 11, 2010

ELIZABETH D. LAPORTE
United States Magistrate Judge